E-FILED
Tuesday, 13 March, 2018  01:24:54 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

FILED
3/2/2018 3:32 PM
TAMMY WEIKERT, CIRCUIT CLERK
ROCK ISLAND COUNTY, IL

**STATE OF ILLINOIS**
**IN THE CIRCUIT COURT OF THE 14TH JUDICIAL CIRCUIT**
**ROCK ISLAND COUNTY, ILLINOIS**

CMB EXPORT, LLC, and CMB SUMMIT, LLC )
d/b/a CMB REGIONAL CENTERS,                        )
                                                                              )
                                             Plaintiffs,           )
                                                                              )               Case No.:     **2018CH68**
         v.                                                               )
                                                                              )
KIMBERLY ATTEBERRY,                                     )
CHRISTOPHER ATTEBERRY,                             )
ANGELIQUE BRUNNER, PETTLES GROUP,    )
LLC d/b/a EB5 CAPITAL and                              )
VERMILION CONSULTING, LLC,              )
                                                                              )
                                             Defendants.       )

## COMPLAINT AT LAW

Plaintiff, CMB EXPORT, LLC, CMB SUMMIT, LLC d/b/a CMB REGIONAL CENTERS ("CMB" or the "Company"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH LLP, for its Complaint against Defendants, KIMBERLY ATTEBERRY, CHRISTOPHER ATTEBERRY, ANGELIQUE BRUNNER, PETTLES GROUP, LLC d/b/a EB5 CAPITAL, and VERMILION CONSULTING, LLC (collectively, "Defendants"), states as follows:

## THE PARTIES

1.      CMB Export, LLC is a Texas limited liability company and CMB Summit, LLC is a Texas limited liability company, each with its principal place of business located at 7819 42nd Street West, Rock Island, Illinois, 61201.  CMB is engaged in providing a variety of resources under the federal EB-5 Visa Program by which foreign nationals invest in development

projects in the United States as a way of securing permanent residency status in this country. CMB's business is literally worldwide, with clientele from countries in Europe, Asia, and Latin America.

2.      Defendant Angelique Brunner ("Brunner") is an individual who resides at 701 Lamont Street, NW, Washington, DC.  She is a former independent contractor of CMB having performed services for CMB related to CMB's projects through the Rock Island, Illinois, CMB office and was at all times relevant hereto acting with and through Kimberly Atteberry, a one time independent contractor and later employee of CMB, and Christopher Atteberry as a part of the civil conspiracy set forth hereinafter to steal trade secrets and interfere with the prospective economic advantage of CMB.  Brunner is currently the President of Pettles Group, LLC, d/b/a EB5 Capital which is a direct competitor of CMB in the EB5 market place.

3.      Defendant Pettles Group, LLC d/b/a EB5 Capital  (hereafter "EB5 Capital) is a Delaware Limited Liability Company, operating in the EB5 financial space, securing financing packages for EB5 appropriate projects.  It is a direct competitor with CMB.

4.      Defendant Kimberly Atteberry ("Kim Atteberry") is an individual formerly residing at 1620 21st Street, Rock Island, Illinois 61201.  The civil conspiracy set forth below began while she was a resident of the State of Illinois and many of the acts in furtherance of the conspiracy occurred in Illinois.  She currently resides at 10 Tetilla Road, Santa Fe, New Mexico. She is formerly an independent contractor of CMB from July 1, 2011 through October 31, 2012. From November 1, 2012 through February 26, 2013, she was a direct employee and a vice-president of CMB.  At all times relevant hereto she engaged in a civil conspiracy with her husband, Christopher Atteberry and Angelique Brunner and EB5 Capital to steal trade secrets and to interfere with the prospective economic advantage of CMB.

5.     Defendant Christopher Atteberry ("Chris Atteberry") is an individual formerly residing at 1620 21st St., Rock Island, Illinois 61201.  The civil conspiracy set forth below began while he was a resident of the State of Illinois and many of the acts in furtherance of the conspiracy occurred in Illinois.  He currently resides at 10 Tetilla Road, Santa Fe, New Mexico.  He is Kim Atteberry's husband and a former hourly employee for Rock Island Auction Company ("Rock Island Auction"), an independent company owned and operated by the managing member of CMB.  Rock Island Auction Company shares facilities with CMB.

6.     Vermilion Consulting, LLC is a consulting company providing services to regional centers and other persons seeking economic information and other services in connection with securing EB5 financing for their projects.  It is the consulting company used by Kim Atteberry before, during and after her connection with CMB and is the corporate entity that Defendants Kim Atteberry and Chris Atteberry utilized to further the civil conspiracy which is described herein.  The civil conspiracy set forth below began while the members of Vermilion were residents of the State of Illinois and its business office was located in 1620 21st Street, Rock Island, Illinois.  The acts in furtherance of the conspiracy took place while Vermilion's principal place of business was in Illinois.

## FACTUAL ALLEGATIONS
### CMB's Business

7.     The EB-5 Visa Program allows foreign investors to permanently live and work in the United States by providing permanent visas or so-called "Green Cards" for immigration purposes via investments in U.S. businesses that create full time employment for U.S. workers.  CMB operates under approved "Regional Center" designations within the EB-5 Visa Program.  Regional Center activities allow foreign investors to qualify for permanent residency by making investments as a limited partner in a partnership or a member in a limited liability company

formed or sponsored by the Regional Center.  The partnership then generally invests into qualified enterprises that are intended to create at least ten U.S. jobs per investor as a result of the investments.

8.    CMB operates U.S. Government-authorized Regional Centers under this program and manages foreign investor money by vetting and structuring investments within various projects deemed suitable for investment under the EB-5 Visa Program that are intended to create the requisite number of jobs.  CMB has been working in this area for approximately twenty years.

9.    In the course of its business, CMB collects and maintains highly confidential personal information on potential investors, including highly sensitive financial data, highly confidential and privileged attorney-client information, highly confidential and proprietary investment project information, in addition to developing and maintaining its own proprietary business models for client contact, outreach, project evaluation, and project development.

**Defendants Kim and Vermilion's Work for CMB**

10.    Kim Atteberry began working for CMB on July 18, 2011.  She originally worked for the Company as an independent contractor, providing economic impact evaluation services and relevant economic program guidance for various CMB investment projects.

11.    On or about November 14, 2012, CMB offered, and Kim Atteberry accepted, a full time vice-president position.  As a vice-president, Kim Atteberry was responsible not only for economic valuations and assessments of various projects, but was also the project development team leader responsible for gathering the relevant documentation of new business projects for CMB.  In this capacity, Kim Atteberry had relationships with CMB's outside business and immigration professionals as well as U.S. Government contacts.

12.     Also as a vice-president, Kim Atteberry and Vermilion had access to virtually all of CMB's proprietary information on projects, potential investors, and current and potential investment projects, all of which were protected by non-disclosure agreements.  She also had access to CMB's sales and development plans, marketing plans, legal documents, and financial performance evaluations.

13.     Kim Atteberry, as the project development team leader, had involvement with "near term" (estimated to be less than six months development time) business projects worth a minimum of $3.2 billion.  At the time of her resignation, these same projects were worth $260 million in income to CMB.

14.     When Kim Atteberry began working for CMB, she asked CMB management to create a position for her husband, Chris, who planned to accompany her from Washington, D.C. CMB owner Pat Hogan ("Hogan") offered Chris Atteberry a job paying $50,000 annually until he could obtain employment elsewhere.  The position was solely within Hogan's auction business, Rock Island Auction Company, a high-end, antique firearm and other weapons auction house.  Chris Atteberry began working for Rock Island Auction Company on August 27, 2012. His assigned duties were exclusive to Rock Island Auction Company.

15.     At no time was Chris Atteberry authorized to have access or view or possess any CMB materials, including any proprietary information or any other documents in possession of or developed by the Company.  In addition, as a Rock Island Auction employee, Chris Atteberry was restricted from accessing CMB information through the CMB security measures described below.   Moreover, Kim Atteberry and Chris Atteberry represented to CMB that Chris Atteberry's role in Vermilion Consulting, LLC was restricted to his aviation industry work.

**Kim Atteberry's Resignation from CMB and Conspiracy with Angeliique Brunner**

16.     On February 26, 2013, Kim Atteberry resigned from CMB, effective immediately. She resigned by sending an email message to Patrick F. Hogan, at that time President of CMB.

17.     Almost immediately after receiving her resignation notice, CMB's Senior Vice President, (at that time) Kraig Schwigen ("Schwigen") met with Kim Atteberry and requested she return all CMB information and documents in her possession. She responded that she had no CMB materials or information and that she had deleted or destroyed everything in her possession.

18.     Within days, however, on March 4, 2013, when the Rock Island Police Department executed a search warrant on the home of Kim Atteberry and Chris Atteberry, CMB learned that Kim lied to Schwigen when she told him she had deleted and destroyed all of CMB's property in her possession.

19.     CMB discovered that, prior to her resignation, Kim Atteberry and her husband Chris Atteberry had removed significant amounts of CMB's confidential proprietary and privileged information. Specifically, while still employed by CMB, Kim Atteberry removed vast amounts of CMB proprietary information, such as requests for evidence, business plans, regional center applications, CMB annual reports to the USCIS, highly confidential individual client documents (including personal financial information, family data, and immigration data), loan agreements, project proformas, loan proformas, intercreditor agreements, partnership documents, requests for qualifications by potential projects, as well as highly sensitive project information from private developers, state and federal entities, and general CMB investment information.

20.     Ultimately, CMB also discovered that Kim Atteberry entered into a civil conspiracy with Angelique Brunner and EB5 Capital which began on March 4, 2013, when at the suggestion of Kim Atteberry, Angelique Brunner on behalf of EB5 Capital entered into a formal

written non-disclosure agreement which was the first step in their civil conspiracy to hide their activities and to subvert and steer potential CMB-originated investment targets in Tennessee with the intent of taking away CMB potential business with these developers and direct them to Angelique Brunner and EB5 Capital.  In furtherance of this conspiracy Kim Atteberry falsely advised at least one CMB client, involved in the so-called "Buckingham transaction", one of the investment targets in Tennessee, a $46 million loan, that CMB was no longer interested in pursuing its project with the intent to direct the project to her own consulting company and to Angelique Brunner.  Also, in furtherance of this conspiracy Kim Atteberry sought to and did set up communications between herself, Angelique Brunner and several of CMB's customers including Waveland Financial, Buckingham Companies, Robert Swerdling and others.   Kim Atteberry facilitated such communications by either arranging or trying to arrange direct communication between these customers and Angelique Brunner or acting as the intermediary between the customers and Angelique Brunner.

### CMB's Confidential and Proprietary Information Goes to Angelique Brunner

21.     Over the course of its business life, CMB developed or acquired large amounts of proprietary information, including, but not limited to business methodologies, project and investor evaluation methods, computer software, business ideas, billing procedures, pricing data, client personal and financial data, potential and ongoing investment project details, project financing, customer servicing methods, customer databases, legal source material, job reports and methodologies relating to the calculation of jobs increases for project and other data related to its EB-5 business.  CMB's product services and business operations incorporate and are based on its confidential and proprietary information.

22.     CMB has expended a significant amount of time, effort and resources to protect its confidential and proprietary information.  By way of example, CMB stores its electronic data

and confidential information behind password firewalls, restricts access to both its hard copy and electronic client information, and advises its employees and managers of the highly sensitive and confidential nature of the information that it maintains.

23.     CMB's confidential and proprietary information is not available to the general public or to CMB competitors through legitimate means.  CMB does not provide its confidential or proprietary database information to potential investors or potential project managers without requiring that the interested parties sign a non-disclosure agreement and/or without removing confidential information from the released material.

24.     Equally as sensitive as its own information, CMB retains and protects confidential and proprietary business information on behalf of various state, federal and private business entities seeking EB-5 investment from CMB and partnerships and clients.  The nature of these projects, their scope, and their business plans are highly sensitive, and CMB is required to sign nondisclosure agreements ("NDAs") with these entities as a precondition for even initial discussions about potential business.  Violation of the terms of these NDAs can subject CMB to significant financial penalties, as well as the loss of millions of dollars in investment opportunities for CMB and its clients.

25.     Because the stolen CMB confidential information maintained by CMB is essential to the operation of CMB's business, Defendants will be able to instantly establish a competing business enterprise with CMB and approach CMB's existing customers, potential customers, and potential project managers for work.

26.     In furtherance of the civil conspiracy with Angelique Brunner and EB5 Capital, Kim Atteberry has used CMB trade secret information to engage in significant contact with

CMB clients, potential clients, and investment projects throughout the scope of CMB's operations.

27.     In addition, by virtue of her former role in CMB, Kim Atteberry has extensive knowledge of CMB's business, including knowledge of confidential personnel information, CMB products, services, project certification, and client validation procedures.  Through her participation in CMB's usual business, she took part in marketing, selling, and serving CMB investors, project managers, and perspective customers, all using CMB's financial, managerial, and information resources, including CMB's confidential information.

28.     Subsequent to her departure and in furtherance of the civil conspiracy set forth herein, she participated in activities to compete with CMB by using CMB'ss proprietary material against CMB's interest and for the benefit of Angelique Brunner and EB5 Capital while endeavoring to divert business CMB opportunities, including the Waveland Financial Nashville, Tennessee project, and the Swerdling & Associates Tennessee project, away from CMB by misrepresenting CMB's interest in the projects to potential developers.

29.     Following her departure from CMB she committed acts in furtherance of this conspiracy with Angelique Brunner and EB5 Capital by manipulating a communication to the developer of the Buckingham project that CMB was no longer interested in their project.  She furthered the conspiracy by securing a financial package for the Buckingham project through further manipulation and had the financial package emailed to Angelique Brunner.  In addition she furthered the conspiracy by using email to arrange for a telephonic conference with Waveland Financial and Robert Swerdling.  In addition, Kim Atteberry also committed the following conspiratorial actions with Angelique Brunner, aided and abetted by her husband, Chris Atteberry:

a.      In furtherance of the conspiracy to violate the Illinois Trade Secret Act, in March and April, 2013, Kim Atteberry or Chris Atteberry or both solicited Angelique Brunner to secure a copy of a confidential CMB jobs report and other documents which Kim Atteberry had written for CMB from sources with which they were familiar in China so that Kim Atteberry could use the methodologies and information in the jobs report for a project of Angelique Brunner's and EB5 Capital's and not have to "reinvent the boilerplate" or "reinvent the wheel".

b.      In furtherance of the conspiracy to violate the Illinois Trade Secret Act Angelique Brunner secured the requested jobs report in China and transmitted the jobs report to Kim Atteberry so that she could use it and did use it as a template and incorporate the format and the methodologies into a project for Angelique Brunner.

c.      In addition, also, in furtherance of the conspiracy, Kim Atteberry used "from her head" various confidential and proprietary information and methodologies which she had learned during her tenure at CMB in various projects for Angelique Brunner and her firm EB5 Capital.

## COUNT I
## <u>CIVIL CONSPIRACY TO VIOLATE THE ILLINOIS TRADE SECRET ACT</u>
### (Against All Defendants)

30.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-29 of the Complaint.

31.     Defendants intentionally committed acts in furtherance of their conspiracy to solicit  CMB customers, interfere with CMB contracts, and to acquire and to use, without authorization, CMB's confidential information and trade secrets in violation of 765 Ill. Comp. Stat. 1065/1, *et seq*.

32.     Specifically, Defendants conspired together to knowingly misappropriate and to use in their own competing business projects and in the business projects of Angelique Brunner, and EB5 Capital CMB's jobs reports, economic analyses templates, and other confidential documents, for the purpose of diverting CMB business to themselves and to Angelique Brunner and EB5 Capital and  to compete unfairly with CMB by using CMB's trade secret information in violation of the Company's non-disclosure agreements.

33.     CMB takes affirmative efforts to maintain the secrecy of the information and documents that Defendants improperly acquired and misappropriated by using password protection, limited distribution, non-disclosure agreements, and notification to employees that the information is confidential and not to be disseminated outside the Company without proper authorization. In addition to all other steps taken to protect its confidential and proprietary information CMB requires all departing contractors and employees to return all such information upon request. Defendants Kim Atteberry, Chris Atteberry and Vermilion did not return such information upon request at Kim Atteberry's departure and subsequent to March 4, 2013, in furtherance of the civil conspiracy alleged here, Defendants utilized such CMB information for the benefit of themselves and to the competitive disadvantage of CMB.

34.     CMB derives economic value, or the potential for economic value, from the use of the information that Defendants improperly acquired and knowingly misappropriated through their conspiracy.

35.     As a result of Defendants' actions in furtherance of their conspiracy and improperly taking and using CMB trade secrets and proprietary information, CMB has suffered lost business and faces irreparable harm in the form of lost customers and lost position in the marketplace and loss of the economic value of its trade secret information which it developed over a period of twenty years of experience in the EB5 business. As a result of the conspiratorial actions set forth herein Defendants were able to acquire and use CMB's trade secret information so developed without cost to Defendants and were able to use said information and to unfairly compete with CMB in the EB5 market place.

**COUNT II**
**CONSPIRACY TO VIOLATE THE COMPUTER FRAUD AND**
**ABUSE ACT, 18 U.S.C. § 1030, *et seq.***
**(Against All Defendants)**

36.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-35 of the Complaint.

37.     CMB provided Kim Atteberry access to password protected computers for the sole purpose of transacting business with CMB's customers and in furtherance of CMB's business. Kim Atteberry and Chris Attebery utilized Kim's access to misappropriate and to acquire for their own use CMB's confidential and proprietary information.

38.     In furtherance of their conspiracy with Angelique Brunner and one another, Kim Atteberry and Chris Atteberry, conveyed and used for the benefit of Angelique Brunner and EB5 Capital, confidential and proprietary information and material which they intentionally and without authorization, or in excess of their authorization, previously removed from CMB by surreptitious means in the unauthorized use of CMB's protected computers in violation of the Computer Fraud and Abuse Act, Act 18 U.S.C. § 1030, *et seq*.

39.     In furtherance of their conspiracy Kim Atteberry and Chris Atteberry made available and used for the benefit of their agreement with Angelique Brunner and EB5 Capital, CMB records which they intentionally and surreptitiously and in an unauthorized manner previously removed through the use of CMB's protected computers in violation of the Computer Fraud and Abuse Act, Act 18 U.S.C. § 1030, *et seq*.

40.     In furtherance of their conspiracy Defendants utilized in their conspiracy improperly obtained confidential and trade secret information which they previously acquired unlawfully through CMB's protected computers for purpose of setting up a competing business with CMB.  They arranged for and facilitated the transmission of trade secret information to

Angelique Brunner and EB5 Capital and conspired with Angelique Brunner and EB5 Capital to interfere with the prospective economic advantage of CMB.

41.     As a result of Defendant's actions, CMB suffered losses in excess of $50,000, including incurring and paying substantial costs in an effort to re-secure its computer systems and data information storage capabilities from further intrusion by Defendants.

**COUNT IV**
**CIVIL CONSPIRACY**
**(Against All Defendants)**

42.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-41 of the Complaint.

43.     Defendants entered into a voluntary agreement for the purpose of misappropriating confidential trade secret and proprietary information from CMB in knowing violation of their statutory and common law duties.

44.     In furtherance of the conspiracy, Kim Atteberry, conveyed and utilized massive amounts of CMB's confidential and business records, some in hard copy and some in electronic form, in violation of her statutory and common law duties.

45.     In furtherance of the conspiracy, Chris Atteberry facilitated and utilized the removal of CMB records, in violation of his statutory and common law duties.

46.     Vermillion, through the actions of its officers, and in furtherance of the Defendants' agreement participated in the conspiracy by receiving and utilizing massive amounts of CMB confidential and proprietary information by serving as a repository for the information and providing a vehicle for the use of the improper information in competing business activities with CMB.

47.     Also in furtherance of their conspiracy Defendants Kim Atteberry and Chris Atteberry directed and solicited Angelique Brunner to secure CMB confidential and non-

disclosure protected documents in China and thereby Defendants improperly obtained confidential information for the express purpose of setting up a competing business with CMB, for use in business and projects for Angelique Brunner and EB5 Capital and for the outright sale of CMB proprietary information for personal gain all in violation of Kim's fiduciary duty, federal and state law, and the Company's non-disclosure agreements.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

48.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-47 of the Complaint.

49.    In furtherance of the conspiracy Kim Atteberry contacted CMB clients and actively misled them with respect to CMB's ongoing business deals as part of Defendants intentional scheme to use CMB's proprietary and trade secret information to set up a competing business operation and to divert said business to Angelique Brunner and EB5 Capital.

50.    CMB reasonably expected to enter into and continue a business relationship with those clients that Defendants conspired to be diverted from CMB.

51.    Kim Atteberry purposefully interfered with CMB's current and expected economic advantage in order to divert said projects to Angelique Brunner and EB5 Capital so that Defendants could benefit themselves through their conspiracy with respect to the following projects and customers: Waveland Financial, Buckingham projects, Nashville Tennessee projects and others yet to be discovered.

52.    As a result of Defendants' conspiracy to intentionally interfere with CMB's economic prospective, CMB suffered damages, including lost business, economic hardship and loss of business reputation.

WHEREFORE, Plaintiff, CMB EXPORT, LLC and CMB SUMMIT, LLC d/b/a CMB REGIONAL CENTERS, respectfully request that this Honorable Court enter an Order against Defendants as follows:

a.    A permanent injunction prohibiting Defendants from using, disclosing or further misappropriating CMB's trade secrets and confidential information;

b.    Monetary damages to compensate CMB for the harm it suffered as a direct and proximate result of Defendants' conspiracy to violate state and federal law; and

c.    An order requiring Defendants to return all confidential and proprietary information that is the property of CMB, its clients, or its potential or actual business partners.

Respectfully submitted,

CMB EXPORT, LLC and CMB SUMMIT, LLC d/b/a CMB REGIONAL CENTERS


By:    */s/ Judith S. Sherwin*
        One of Its Attorneys

Judith S. Sherwin (ARDC #2585529)
John J. Michels, Jr. (ARDC No. 6278877)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Phone: (312) 345-1718
Fax: (312) 345-1717
Judith.Sherwin@lewisbrisbois.com
John.Michels@lewisbrisbois.com

# EXHIBIT B



Judith S. Sherwin
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Judith.Sherwin@lewisbrisbois.com
Direct: 312.463.3319

March 12, 2018                                                   Our File: 31253-03

**<u>VIA ELECTRONIC MAIL</u>**

Scott Mendeloff, Esq.
Greenberg Traurig
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
E-Mail: mendeloffs@gtlaw.com

      Re:    <u>CMB Export, LLC, et al v. Atteberry, et al</u>

Dear Mr. Mendeloff:

     Enclosed please find the Complaint and Summons for Angelique Brunner and Pettles, LLC.

     These are being sent to you in connection with your indication to me that you will be accepting service for Ms. Brunner and Pettles.

              Very truly yours,

              */s/ Judith S. Sherwin*

              Judith S. Sherwin of
              LEWIS BRISBOIS BISGAARD & SMITH LLP

JSS:mcd
Enclosures

---

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY

LOUISIANA • MARYLAND • MASSACHUSETTS • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK

NORTH CAROLINA • OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TEXAS • WASHINGTON • WEST VIRGINIA
4827-9337-2255.1

# EXHIBIT C

## *Cmb Export LLC; D&B Duns Market Identifiers Plus (US)*

January 7, 2018

### *Cmb Export* LLC

7819 42nd St W

Rock Island, Illinois 61201-7320

United States


**BUSINESS ADDRESS:** , 7819 42nd St W, Rock Island, IL 61201-7320, United States
**Metropolitan Statistical Area:** Davenport-Moline-Rock Island, Ia-IL - 1960
**County:** Rock Island
**Other Locations:**
**CONGRESSIONAL DISTRICT:** 17th Congressional District  - block face level


## Communications

**Telephone:** 309-797-1550


## Company Identifiers

**DUNS NUMBER:** 83-179-7910


## Company Information

**Founded:** 1997
**Legal Status:** Partnership
**Organization Type:** Single Location, Small Business
**Employees:**
**Employee Total:** 16
**Employees At This Location:** 16 - Actual
**Employee Total One Year Ago:** 16
**Employee Total Three Years Ago:** 16


## Executives

| | |
|---|---|
| Executive Director: | |
| | Garrett Connors, Executive Director |
| Member: | Patrick F Hogan, Member |
| | Kraig Schwigen, Member |
| Director: | |
| | Kyler James, Director |

Gabriel Aizenberg

Cmb Export LLC; D&B Duns Market Identifiers Plus (US)

Manager:

Taylor Fulford, Manager

Chen Freitag, Manager

Vitaly Modlo, Manager

Spencer Lee, Manager

Jenny Kolar, Manager

Matt Hogan, Manager

## Description

**Industry Type:** Finance, Insurance, And Real Estate; Investor

## Market And Industry

**NAICS Codes:**

523910 - Miscellaneous Intermediation
**SIC Codes:**

6799 - Investors, nec

67990000 - Investors, nec, nsk

## Financials

## Income Statement

**Sales Revision Date:** June 3, 2017
**Annual Sales:** $1,300,000 - Estimate

**Cross Reference/Variant Names:** _**Cmb**_ Regional Centers



D&B Duns Market Identifiers Plus (US)
Copyright  2018  Dun & Bradstreet, Inc.

Gabriel Aizenberg

Cmb Export LLC; D&B Duns Market Identifiers Plus (US)

**End of Document**

Gabriel Aizenberg

# EXHIBIT D

```
               IN THE UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF ILLINOIS (Rock Island)


                  Law No. 4:13-cv-04051-SLD-JAG

CMB EXPORT, LLC, CMB SUMMIT, LLC
d/b/a CMB REGIONAL CENTERS,

          Plaintiff,

     vs.

KIM ATTEBERRY, CHRISTOPHER
ATTEBERRY, AND VERMILION CONSULTING, LLC,

          Defendants.



               DEPOSITION OF KRAIG SCHWIGEN
                    September 14, 2017
                       1:05 p.m.
          8801 Horizon Boulevard, Northeast, Suite 300
                  Albuquerque, New Mexico




          PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE,
this deposition was:


TAKEN BY:       ROBERT B. MC MONAGLE
                ATTORNEY FOR DEFENDANTS


REPORTED BY:    CHERYL ARREGUIN, RPR
                New Mexico CCR No. 21
                Kathy Townsend Court Reporters
                110 Twelfth Street, Northwest
                Albuquerque, New Mexico  87102


RECORDED ON:    ZOOM MEETINGS
                Meeting ID: 123 889 203
```

**Fortz Legal Support**

**www.FortzLegal.com**

**844.730.4066**



```
1              IN THE UNITED STATES DISTRICT COURT
          CENTRAL DISTRICT OF ILLINOIS (Rock Island)
2

3             Law No. 4:13-cv-04051-SLD-JAG

4  CMB EXPORT, LLC, CMB SUMMIT, LLC
   d/b/a CMB REGIONAL CENTERS,
5
              Plaintiff,
6
        vs.
7

8  KIM ATTEBERRY, CHRISTOPHER
   ATTEBERRY, AND VERMILION CONSULTING, LLC,

9             Defendants.

10

11            DEPOSITION OF KRAIG SCHWIGEN
                September 14, 2017
12                  1:05 p.m.
         8801 Horizon Boulevard, Northeast, Suite 300
13               Albuquerque, New Mexico

14

15

16

17       PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE,
   this deposition was:
18

19  TAKEN BY:      ROBERT B. MC MONAGLE
                   ATTORNEY FOR DEFENDANTS
20

21  REPORTED BY:   CHERYL ARREGUIN, RPR
                   New Mexico CCR No. 21
22                 Kathy Townsend Court Reporters
                   110 Twelfth Street, Northwest
23                 Albuquerque, New Mexico  87102

24  RECORDED ON:   ZOOM MEETINGS
                   Meeting ID: 123 889 203
25
```

CMB EXPORT vs KIM ATTEBERRY
Kraig Schwigen on 09/14/2017

Job 5259
Pages 2..5

---

Page 2

```
 1              A P P E A R A N C E S
 2   For the Plaintiff:
 3        JOHN J. MICHELS, JR.
          LEWIS BRISBOIS BISGAARD & SMITH, LLP
 4        Attorneys at Law
          1700 Lincoln Street
 5        Suite 4000
          Denver, Colorado  80203
 6        (720) 292-2019
          john.michels@lewisbrisbois.com
 7
          JUDITH S. SHERWIN (Zoom Meetings)
 8        LEWIS BRISBOIS BISGAARD & SMITH, LLP
          Attorneys at Law
 9        550 West Adams Street
          Suite 300
10        Chicago, Illinois  60661
          (312) 463-3412
11        judith.sherwin@lewisbrisbois.com
12        TARA A. MOFFIT
          In-House Counsel
13        CMB Regional Centers
          Midwest Executive Offices
14        7819 42nd Street West
          Rock Island, Illinois  61201
15        (309) 797-1550
          tmoffit@cmb3b5visa.com
16
17   For the Defendants:
18        ROBERT B. MC MONAGLE
          LANE & WATERMAN, LLP
19        Attorneys at Law
          220 N. Main Street
20        Suite 600
          Davenport, Iowa  52801
21        (563) 333-6616
          rmcmonagle@l-wlaw.com
22
23   Also Present:
24        KIM ATTEBERRY
          CHRISTOPHER ATTEBERRY
25        PAT HOGAN
```

Page 3

```
 1              I N D E X
 2                                          PAGE
 3   KRAIG SCHWIGEN
 4        Examination by Mr. McMonagle        4
 5   REPORTER'S CERTIFICATE                  79
 6   DEPONENT SIGNATURE/CORRECTION PAGE      81
 7
 8
 9
10           E X H I B I T S
11
12              NONE
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1              KRAIG SCHWIGEN
 2   having been first duly sworn, was examined and
 3   testified as follows:
 4              EXAMINATION
 5   BY MR. MCMONAGLE:
 6   Q.  Good day, sir.
 7       Would you state your name for the record,
 8   please?
 9   A.  Yeah.  I'll spell also, because they're
10   difficult.  It's Kraig, K-R-A-I-G, last name Schwigen,
11   S-C-H-W-I-G-E-N.
12   Q.  Have you ever had your deposition taken
13   before, Mr. Schwigen?
14   A.  I have.
15   Q.  Approximately how many times?
16   A.  Twice that I -- I'm sure of.
17   Q.  Okay.
18       And what types of matters were they?
19   A.  The first one was wrongful death.  My wife --
20   I married previously.  My wife went into a doctor's
21   office, received an allergy injection, died in the
22   doctor's office.  And there was a wrong -- wrongful
23   death suit that followed that.
24   Q.  I'm sorry to hear that.
25   A.  Thank you.
```

Page 5

```
 1   Q.  Okay.
 2       Any commercial-related deposition -- was the
 3   other one a commercial-related deposition?
 4   A.  The other one was probably best classified as
 5   improper actions of an attorney.
 6   Q.  I -- I find that hard to believe.
 7   A.  I think that's --
 8       MR. MICHELS:  It was me.  Okay.  I'll admit.
 9   It was me.
10       THE WITNESS:  I think that's the best way to
11   classify that one.
12       MR. MC MONAGLE:  Fair enough.
13   Q.  Your attorney or some other attorney?
14   A.  No, no.
15   Q.  Okay.  Fair enough.
16   A.  Not mine.
17   Q.  Now, do you bear ill-will against attorneys
18   based on that?
19   A.  No.
20   Q.  Okay.  Just checking.
21       MR. MICHELS:  Not for that reason, at least.
22   Q.  (BY MR. MC MONAGLE)  Where do you live
23   community-wise?  I don't need the street address.
24   A.  Yeah.  It's the unincorporated part of Rock
25   Island County.  It is a Milan mailing address, but it's
```

Page 6

1  actually in the unincorporated part of Rock Island
2  County.
3      Q.  And for how long have you lived there?
4      A.  I -- 20 years.
5      Q.  Are you there by yourself, Mr. Schwigen?
6      A.  No, sir.
7      Q.  Any family members?
8      A.  A wife.
9      Q.  Okay.
10          Any other residences other than that?
11     A.  Yeah.  I -- not primary residence, but --
12     Q.  Right, correct.
13     A.  -- secondary-type residence.
14     Q.  Okay.
15          Where is that it?
16     A.  Lake of the Ozarks.
17     Q.  Okay.
18          Where were you born, sir?
19     A.  Burlington, Iowa.
20     Q.  And have you lived most of your life in the
21  Eastern Iowa area?
22     A.  Western Illinois.  I was born in Burlington,
23  Iowa, but I lived in Western Illinois.
24     Q.  That's the accent.
25     A.  Quad Cities.

Page 7

1      Q.  Yes.  Okay.  Thank you.
2          Did -- where did you attend high school?
3      A.  United Township High School in East Moline.
4      Q.  And when did you graduate, sir?
5      A.  1976.
6      Q.  Did you attend any formal education beyond
7  high school?
8      A.  I did.
9      Q.  Where was that?
10     A.  Black Hawk College.
11     Q.  Studying what, sir?
12     A.  Law enforcement.
13     Q.  And did you receive a degree or certificate in
14  that?
15     A.  I did.
16     Q.  A bachelor's or a certificate?
17     A.  It's the associate's degree in law
18  enforcement.
19     Q.  Got you.
20          Any other formal school beyond the AA at Black
21  Hawk?
22     A.  No.
23     Q.  Did you ever serve in the military?
24     A.  No, sir.
25     Q.  And since you left Black Hawk College, how --

Page 8

1  how many jobs have you had?
2          And if you need it to be a ballpark figure,
3  that's fine, too.  Just let me know.
4      A.  Yeah.  It -- when I think of primary ones, it
5  would probably be about three.
6      Q.  And what were you doing in these jobs?
7      A.  It -- one, I would have been in the -- the
8  grocery industry following Black Hawk College.  From
9  grocery industry, would have gone into law enforcement.
10  And from law enforcement, would have gone to work for
11  CMB.
12     Q.  And the way you phrased your answer, it leads
13  me to believe you may have had some smaller jobs other
14  than these.
15     A.  Well, it -- more of like the self-employment
16  type of things --
17     Q.  Okay.
18     A.  -- is what they would have been.
19     Q.  Okay.
20          What types of areas were you -- were you
21  involved in self-employment?
22     A.  Build homes, develop real estate, things of
23  that nature.
24     Q.  And were you an actual builder, or were you
25  sort of a supervisor --

Page 9

1      A.  No.  I actually pounded the nails, too.
2      Q.  Great.
3          About how many homes would you say?
4      A.  It -- probably less than 10, that I would have
5  built personally.
6      Q.  Okay.
7          And developing projects, what kind of
8  projects?
9      A.  Two residential subdivisions.
10     Q.  Okay.
11          Any commercial?
12     A.  No.
13     Q.  And the size of these residential --
14  residential subdivisions?
15     A.  Geographically or number of homes?
16     Q.  Number of homes.
17     A.  First one, 27, but I -- I developed sort of
18  the infrastructure part of it, so I didn't come in and
19  develop every single home.  I developed the -- the
20  residential subdivision, the platform that homes --
21     Q.  Okay.
22     A.  -- would be built on --
23     Q.  Okay.
24     A.  -- afterwards.
25          So first one was 27.  The second one, I

# EXHIBIT E

```
          IN THE UNITED STATES DISTRICT COURT
       CENTRAL DISTRICT OF ILLINOIS (Rock Island)


            Law No. 4:13-cv-04051-SLD-JAG

CMB EXPORT, LLC, CMB SUMMIT, LLC
d/b/a CMB REGIONAL CENTERS,

        Plaintiff,

    vs.

KIM ATTEBERRY, CHRISTOPHER
ATTEBERRY, AND VERMILION CONSULTING, LLC,

        Defendants.



            DEPOSITION OF PAT HOGAN
            September 14, 2017
                8:36 a.m.
     8801 Horizon Boulevard, Northeast, Suite 300
            Albuquerque, New Mexico




    PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE,
this deposition was:


TAKEN BY:       ROBERT B. MC MONAGLE
                ATTORNEY FOR DEFENDANTS


REPORTED BY:    CHERYL ARREGUIN, RPR
                New Mexico CCR No. 21
                Kathy Townsend Court Reporters
                110 Twelfth Street, Northwest
                Albuquerque, New Mexico  87102

RECORDED ON:    ZOOM MEETINGS
                Meeting ID: 123 889 203
```



```
 1               IN THE UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF ILLINOIS (Rock Island)
 2

 3                Law No. 4:13-cv-04051-SLD-JAG

 4   CMB EXPORT, LLC, CMB SUMMIT, LLC
     d/b/a CMB REGIONAL CENTERS,
 5
                 Plaintiff,
 6
          vs.
 7

 8   KIM ATTEBERRY, CHRISTOPHER
     ATTEBERRY, AND VERMILION CONSULTING, LLC,
 9
                 Defendants.
10

11                    DEPOSITION OF PAT HOGAN
                      September 14, 2017
12                        8:36 a.m.
            8801 Horizon Boulevard, Northeast, Suite 300
13                   Albuquerque, New Mexico

14

15

16

17        PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE,
     this deposition was:
18

19   TAKEN BY:       ROBERT B. MC MONAGLE
                     ATTORNEY FOR DEFENDANTS
20

21   REPORTED BY:    CHERYL ARREGUIN, RPR
                     New Mexico CCR No. 21
22                   Kathy Townsend Court Reporters
                     110 Twelfth Street, Northwest
23                   Albuquerque, New Mexico  87102

24   RECORDED ON:    ZOOM MEETINGS
                     Meeting ID: 123 889 203
25
```

CMB EXPORT vs KIM ATTEBERRY
Pat Hogan on 09/14/2017

Job 5259
Pages 2..5

Page 2

1          A P P E A R A N C E S
2   For the Plaintiff:
3       JOHN J. MICHELS, JR.
        LEWIS BRISBOIS BISGAARD & SMITH, LLP
4       Attorneys at Law
        1700 Lincoln Street
5       Suite 4000
        Denver, Colorado  80203
6       (720) 292-2019
        john.michels@lewisbrisbois.com
7
        JUDITH S. SHERWIN (Zoom Meetings)
8       LEWIS BRISBOIS BISGAARD & SMITH, LLP
        Attorneys at Law
9       550 West Adams Street
        Suite 300
10      Chicago, Illlinois  60661
        (312) 463-3412
11      judith.sherwin@lewisbrisbois.com
12      TARA A. MOFFIT
        In-House Counsel
13      CMB Regional Centers
        Midwest Executive Offices
14      7819 42nd Street West
        Rock Island, Illinois  61201
15      (309) 797-1550
        tmoffit@cmb3b5visa.com
16
17  For the Defendants:
18      ROBERT B. MC MONAGLE
        LANE & WATERMAN, LLP
19      Attorneys at Law
        220 N. Main Street
20      Suite 600
        Davenport, Iowa  52801
21      (563) 333-6616
        rmcmonagle@l-wlaw.com
22
23  Also Present:
24      KIM ATTEBERRY
        CHRISTOPHER ATTEBERRY
25      KRAIG SCHWIGEN

Page 3

1               I N D E X
2                                          PAGE
3   PAT HOGAN
4       Examination by Mr. McMonagle        4
5   REPORTER'S CERTIFICATE                 149
6   DEPONENT SIGNATURE/CORRECTION PAGE     151
7
8
9
10              E X H I B I T S
11                                         PAGE
12  Exhibit 7.  Pat Hogan E-mail,
13      February 26, 2013                   50
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1           PAT HOGAN
2   having been first duly sworn, was examined and
3   testified as follows:
4               EXAMINATION
5   BY MR. MCMONAGLE:
6   Q.  Good morning, sir.
7       Would you state your name for the record,
8   please?
9   **A.  My name is Patrick F. Hogan.**
10  Q.  Okay.
11      And we're here for your deposition in the case
12  of CMB versus the Atteberrys, et al., whatever the
13  actual caption is, but just to short-term the -- the
14  caption; is that correct?
15  **A.  That's correct.**
16  Q.  And I'm sure Mr. Michels informed you of a few
17  things beforehand, because I heard his introduction to
18  my client yesterday, and it sounds very much like what I
19  would go through, but just so we're -- we're clear on
20  this.
21      As you can see, there's a court reporter
22  taking down everything that's said.  So in order to make
23  it easier for her to get down exactly who said what and
24  in what order, it's important that only one person is
25  talking at any one time.  Okay?

Page 5

1   **A.  Yes.**
2   Q.  And it's -- in normal conversation, people
3   tend to halfway through the question start to answer,
4   and -- and I -- I get that, and I have a tendency to do
5   that myself sometime.  If -- if we can just try to --
6   I'll do the best I can to try to let you finish your
7   answer before I start my next question.  If you --
8   **A.  So you want me to wait, okay, until you**
9   **finish.**
10  Q.  Okay.
11  **A.  That's what I -- make sure I -- so I give**
12  **myself a little memory.**
13  Q.  Fair enough.
14      And if you don't understand my question,
15  please ask me to restate it or rephrase it.  I would --
16  I'd be glad to do so.
17      Other than that, if you need a break, let me
18  know you need a break.  If there's a question pending,
19  just go ahead and answer the question, and we can take a
20  break whenever you want.  Otherwise, I will try about
21  every hour-and-a-half or so to say take a break.  If
22  someone needs to elbow me to remind me, that's fine,
23  too.  I don't care about that.
24      Responses need to be verbal.  Shakes of the
25  head and uh-huhs, huh-uhs don't come across too clearly

Page 6

1  on paper.  Okay?
2      **A.  Okay.**
3      Q.  And where do you live, sir?  And I don't need
4  a street address, but just generally, where do you live?
5      **A.  I live in Dallas, Texas.**
6      Q.  Okay.
7          And how long about?
8      **A.  Two-and-a-half years.**
9      Q.  And are you there by yourself, sir?
10     **A.  No.  I'm with my wife.**
11     Q.  Okay.
12         And do you still have a -- a residence in the
13  Rock Island County area, although it's maybe not your
14  full-time residence?
15     **A.  I do.**
16     Q.  And that community is -- is that -- is it
17  Milan?
18     **A.  Milan, Illinois, yes.**
19     Q.  Any other residences?
20     **A.  No.**
21     Q.  Were you -- where were you raised, sir?
22  Where -- where --
23     **A.  Chicago.**
24     Q.  Okay.
25     **A.  Chicago, Illinois.**

Page 7

1      Q.  And did you go to school in -- high school in
2  Chicago?
3      **A.  I did.**
4      Q.  Which high school?
5      **A.  Leo High School.**
6      Q.  Where is that?
7      **A.  On Halsted Street, inside the City of Chicago.**
8      Q.  When did you graduate?
9      **A.  '72.**
10     Q.  Did you attend any formal education beyond
11  high school?
12     **A.  I did.**
13     Q.  And where was that?
14     **A.  Illinois State University.**
15     Q.  Redbirds, right?
16     **A.  You bet.**
17     Q.  And did you receive a degree or certificate?
18     **A.  I did not.**
19     Q.  Okay.
20         How many years did you spend at Illinois
21  State?
22     **A.  A year-and-a-half before the Navy and about a**
23  **year-and-a-half after the Navy.**
24     Q.  Any other formal education beyond high school?
25     **A.  No.**

Page 8

1      Q.  And you mentioned you served in the Navy.
2          When was that?
3      **A.  I think somewhere in the neighborhood of 1974**
4  **through '76.**
5      Q.  Were you drafted?
6      **A.  No.**
7      Q.  I guess maybe that just ended at that point.
8  I'm trying to --
9      **A.  It was still going on --**
10     Q.  Was it?  Okay.
11     **A.  -- but it was ending.**
12     Q.  And what did you do in the Navy?
13     **A.  I worked in the Navy's nuclear power program**
14  **on submarines.**
15     Q.  And the highest grade or rank, rating?
16     **A.  E-5.**
17     Q.  Did you receive an honorable discharge?
18     **A.  I did.**
19     Q.  And roughly how many jobs have you had since
20  you got out of the Navy and went back to Illinois State,
21  just ballpark?
22     **A.  Could you identify a job?**
23     Q.  Sure.  Where you went, did work and they paid
24  you.
25     **A.  So in other words, someone else paid me, not**

Page 9

1  myself?
2      Q.  Correct, correct.
3      **A.  After I left the Navy?**
4      Q.  Correct.
5      **A.  I think one.**
6      Q.  Okay.
7          And what -- where was that, and what was that?
8      **A.  That was repairing carwashes while I was going**
9  **to school.**
10     Q.  Okay.
11         So in that roughly year-and-a-half after the
12  Navy, when you went back to Illinois State, you worked
13  repairing carwashes?
14     **A.  Right.**
15     Q.  And so was that there in the Bloomington area?
16  Where was that?
17     **A.  It was in Bloomington.**
18     Q.  And I take it after that you went out on your
19  own and started your own businesses of various types?
20     **A.  Yes.**
21     Q.  Okay.
22         And roughly how many businesses did you start
23  and operate, since you repaired car washes?
24     **A.  That would take some thinking.**
25     Q.  Okay.

# EXHIBIT F

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| CMB EXPORT, LLC, and | ) | |
| CMB SUMMIT LLC, d/b/a | ) | |
| CMB Regional Centers, | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| KIM ATTEBERRY, | ) | |
| CHRISTOPHER ATTEBERRY, | ) | |
| ANGELIQUE BRUNNER, PETTLES | ) | |
| GROUP, LLC, d/b/a EB5 CAPITAL and | ) | |
| VERMILION CONSULTING, LLC | ) | |
| | ) | |
| *Defendants* | ) | |
| | ) | |

<u>**CORPORATE DISCLOSURE STATEMENT**</u>

As required by Fed. R. Civ. P. 7.1, defendant Pettles Group LLC ("Pettles") states that no corporation directly or indirectly owns 10% or more of any class of Pettles' equity interests.

Dated: March 13, 2018                        Respectfully submitted,


GREENBERG TRAURIG, LLP

/s/    Gabriel Aizenberg
Scott Mendeloff
Gabriel Aizenberg
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: 312-456-8400
*Attorneys for Defendants Angelique
Brunner and Pettles Group, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | |
|---|---|
| CMB EXPORT, LLC, and )<br>CMB SUMMIT LLC, d/b/a )<br>CMB Regional Centers, )<br>)<br>*Plaintiffs* )<br>)<br>v. )<br>)<br>KIM ATTEBERRY, )<br>CHRISTOPHER ATTEBERRY, )<br>ANGELIQUE BRUNNER, PETTLES )<br>GROUP, LLC, d/b/a EB5 CAPITAL and )<br>VERMILION CONSULTING, LLC )<br>)<br>*Defendants* )<br>) | Case No. _____ |

**CORPORATE DISCLOSURE STATEMENT**

As required by Fed. R. Civ. P. 7.1, defendant Pettles Group LLC ("Pettles") states that no corporation directly or indirectly owns 10% or more of any class of Pettles' equity interests.

Dated: March 13, 2018                         Respectfully submitted,


                                             GREENBERG TRAURIG, LLP

                                             /s/    Gabriel Aizenberg
                                             Scott Mendeloff
                                             Gabriel Aizenberg
                                             77 West Wacker Drive, Suite 3100
                                             Chicago, Illinois 60601
                                             Tel: 312-456-8400
                                             *Attorneys for Defendants Angelique*
                                             *Brunner and Pettles Group, LLC*

# EXHIBIT G

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CMB EXPORT, LLC, and CMB SUMMIT LLC, d/b/a CMB Regional Centers

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Lewis Brisbois Bisgaard & Smith, LLP
500 West Adams St., Suite 300, Chicago, IL 60661

## DEFENDANTS
Kim Atteberry, Christopher Atteberry, Angelique Brunner, Pettles Group, LLC, d/b/a EB5 Capital and Vermilion Consulting, LLC

County of Residence of First Listed Defendant    New Mexico
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Scott Mendeloff & Gabriel Aizenberg (GREENBERG TRAURIG, LLP)
Robert B. McMonagle (LANE &WATERMAN LLP)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ |  | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
Proceeding

☒ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Computer Fraud and Abuse Act, 18 U.S.C. § 1030

Brief description of cause:
Trade secret and interference with prospective economic relations

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE   Sara Darrow

DOCKET NUMBER   4:13-CV-04051-SLD-JEH

DATE
03/13/2018

SIGNATURE OF ATTORNEY OF RECORD
s/ Gabriel Aizenberg

**FOR OFFICE USE ONLY**

RECEIPT #    _____    AMOUNT    _____    APPLYING IFP    _____    JUDGE    _____    MAG. JUDGE    _____